May it please the court, Cheryl Gordon-McLeod on behalf of Mr. Fabel. Mr. Fabel's standard sentence range was 57 to 71 months, and he got a 90-month sentence. I think there's two questions presented for this court. The first is really what does the RICO conviction encompass? In other words, was Mr. Fabel convicted of all of the Washington Hells Angels members' acts when he was convicted of RICO and RICO conspiracy, or was he convicted of something less than that? And secondarily, if the answer is he was convicted of something less than that, can the district court enhance his sentence because he refused to accept responsibility for all of the other Hells Angels members' activities? Beginning with the first issue, it's clear from the record, and I'm referring mainly to pages 27 to 30 of the excerpts of record, that the district court based its enhancement on Mr. Fabel's failure to accept responsibility for acts that were committed by other Hells Angels members that Mr. Fabel was not himself convicted of. Let me ask you a question, Counselor. Where in this record do I find any remorse on the part of your client for anything? Mr. Fabel spoke only briefly at sentencing, and you will not find an expression of remorse you will find in his speech at sentencing. I looked all over for some remorse because it seems to me that the bottom line of your argument is that the district court shouldn't have done what it did because of some reason that he had showed remorse, couldn't find it. Where do I find any evidence in this record of an acceptance of responsibility? Going back, let me answer your first point again, and then I'll answer the acceptance of responsibility again. I apologize if the briefs conveyed the impression that we were seeking a lower sentence because Mr. Fabel had actually accepted responsibility. That was not the argument at all. The argument was that his standard range was 57 to 71 months, and the district court erred in increasing the sentence to 90 months due to lack of acceptance of other people's acts. Well, then in trying to come to this, then I find nothing in the record that says he was remorseful. I find nothing in the record that says he evidenced any acceptance of responsibility. The jury convicted him of acts, but they also convicted him of racketeering acts as part of his participation in a gang through a pattern of racketeering activity. Now, we have no question that the court is entitled to consider whether the defendant had accepted responsibility in his connection with activity, correct? No question that the court is entitled for his own acts, Your Honor, just to be clear in the answer. Well, but just a minute. Well, some of his acts was his participation in gang activity. Well, that's where I'm going to disagree with you, but I... Well, what did the jury... Where in the jury's verdict does it say that they did not convict him of racketeering acts as a result of his participation? If you'll permit me to rephrase your question, if you look at the verdict form and excerpts of record at 84, what you'll see is that the verdict was very limited. They got to check off which racketeering acts he was convicted of, and they specified three of the least serious acts. And what were they? Vince, vehicle identification number switching, 1341 fraud, and the extortion involving Greg Baldwin. He was not charged with the murder count. He was not convicted of the robberies. I understand that. However, he was convicted of those three acts. And he was convicted of a pattern of racketeering, but I wanted to point the court to what the jury instructions actually said. If you look at jury instruction 23 on page 28 of our supplemental brief, which includes all of the instructions, you'll see that the definition of pattern was limited. It said you can convict him of this pattern if you find only two acts of racketeering activity. When you go on to the jury instruction 19, defining enterprise, you'll see that it was a really limited definition of enterprise. It says the government, quote, is not required to prove each and every allegation in the indictment about the enterprise or the manner in which the enterprise operated. And, of course, there was no special interrogatory on which one was proved or not. I'll tell you what's concerning me about this. As one of my colleagues in the Tenth Circuit says, even if we spot you the proposition that there was error in the upward departure for acceptance of responsibility as potential double counting, didn't the court also, however, say that it was going to go ahead and vary upward based upon the gang participation, namely preying on the vulnerable, quote, quote, the guidelines don't take into consideration the level of violence employed by the gang, the management role of Mr. Fable in that regard, and his personal responsibility in the particular crimes of conviction. It seemed to me that that kind of washed away any potential error. And if the district court judge had said that, it probably would have washed away any error. Well, that's what he did say. I send these and I directly said quotes because that's what he said. But what preceded the quotes, which I believe you were taking from pages 28 through 30, was the district court statement on page, district court started speaking on page 26 of the excerpts of record. So I want you to explain to me why I'm wrong. On page 20, thank you. On page 27, the district court said, I never heard Mr. Fable take responsibility for the following. And then following that, immediately on page 27, he said, quote, that the Hells Angels were, quote, populated by really frightening individuals, other individuals who were doing horrible things to people out there. He continues on page 28 that Mr. Fable let in Mr. Binder, Rollness, Mercer, and Yates, whom the district court judge called psychopaths. And the district court judge continued on page 28 saying, Mr. Fable, you can't say, boy, I was so surprised to see what they did. So the district court concludes on page 30 after that list of, I never heard Mr. Fable take responsibility for these things, the district court concludes there was no apology for being, quote, at the head of a criminal enterprise that was doing terrible things. So I think the district court's focus, if you look at those three pages, particularly the quotes I've given you, is that there was no apology for it. Well, but it seems to me the district court said that the gang were preying on the vulnerable, the weak, the compromised, and the mentally and otherwise. And that's undoubtedly a quote. Now, just a minute, if I can. And then they say, and then I look at what happened in the defendant's conviction of the extortion of Baldwin. Doesn't seem to me that it differs in any way from vulnerable, weak, compromised. Then I look at Hoard. I look at the history of Hoard, how he used some of his money. And then I look at how the defendant dealt with that. Again, the vulnerable, the weak, the compromised. So how is the district court wrong? What the district court did is begin its discussion on page 28 of the excerpts of record, not the government's brief, but the district court's statements, by saying Mr. Fable never apologized for these things. He lists the things, many of which are outside the three racketeering acts of conviction and outside the definition of what the jury instructions mandated that the jury find in order to convict. But in saying that he didn't apologize, he is also saying that he did them. Well, that's an inference that I understand. In other words, if I say you didn't apologize for walking into the courtroom, it is given that you walked into the courtroom. I hear that you're drawing that inference from what the district court says. It seems to me like you're seeking to challenge the fact of these things by merely saying that the judge prefaced those remarks by saying that he didn't apologize for them. Well, and perhaps if I were only saying that he prefaced his remarks by that, then your inference would be the better one. But the district court also concluded his remarks on that on page 30 when he finishes imposing sentence by saying I'm giving you 90 months for, quote, lack of acceptance of guilt and responsibility, close quotes, for allowing the Hells Angels, quotes, to go forth and terrorize, close quotes. So I understand we're both looking at the record, but I think the inference that I'm drawing is that we have to draw the and our burden here as a court is to look at the facts in the light most favorable to you or to the governed. Well, I don't think we've got a factual question here. I think we've got an interpretation of the guidelines that you reviewed in OVO. Well, I think there is a factual question about what the judge said and meant. Well, the transcript is what it is. You accept that. I think what we've got is an interpretation of the guidelines, which under Ressam you reviewed in OVO. Thank you. And I'll reserve four seconds for rebuttal. May it please the Court, my name is Helen Bruner. I'm here representing the United States in this appeal. We do create a circuit split if we try to go along with your view of this case, don't we? Oh, I don't think you do. Not necessarily. I don't think you do, Your Honor, for several reasons. I think, if I might, take the long way around. Are you going to revisit the Ninth Circuit and start creating circuit splits? I don't think so. I think counsel, and I'm assuming you're referring to the Andrews case in the Court's question. I think in Andrews is distinguishable from this case for several reasons. Why do we have to go there? I mean, why don't we just say, irrespective of the merits of that argument, we still have the Court saying all of these things that the defendant did. And we have this disagreement with defense counsel about whether that was about apology or whether it was about the fact. But we're going to get around that, I guess. Well, I think, Your Honor, sort of taking your questions in reverse order, I think Your Honor can reach this question based on the Court's statements. The district court here was very clear, I think, in page 30 of the excerpt of record where the Court says, I think the guidelines do not take into full consideration what the level of violence and danger was in this particular chapter of the Hells Angels motorcycle gang. And it does not take into account Mr. Fable's role in allowing some of these individuals to go forth and terrorize. And it does not take into account his personal responsibility for the crimes of being the last point. I think it's important in this case, and it's been discussed in counsel's argument as well, to look at the fact that he was convicted of RICO and conspiracy to commit RICO. And while he was convicted of three specific racketeering acts in connection with those RICO convictions, he could not have carried them out but for his association with the Hells Angels. He used their reputation. He used his fellow members to go forth and carry out these crimes. So I think that is what the district court was saying. With respect to Andrews, however, if I might, Andrews is a pre-Booker case. And I want to start with that because the question in Andrews was whether or not the Court could depart upward and whether or not you could then, you could use a factor that was part of the guidelines calculation to depart upward, using the factors in Chapter 5. This is a case where the Court has varied upward beyond a post-Booker case. So I think the case is, and in fact, in our, in my 28J letter this morning, I've cited another Fifth Circuit case, United States v. Douglas, which allowed the Court to take a look at lack of remorse as a basis for a variance upward, even though the Court had granted a downward departure for acceptance of responsibility. So I think there is a distinction there. And I think as well that given that we are now asking the Court not only to consider the guidelines but also 3553A factors in arriving at its sentence, that the Court can take a look at some of these other considerations that may be applicable for purposes of a guideline calculation but also may be present in a case in a way that requires further consideration under the factors of 3553A. So, for example, in this case, Mr. Fable's history and characteristics, the nature of the offense, all of those things, given that he was sentenced pursuant to a guideline range that was defined by one act of racketeering, the extortion, and given the fact that the District Court had, in fact, not even used all of the enhancements in that guideline range that it might have. The government clearly didn't appeal that, and so I don't want to mislead the Court in any way, but there was a three-level enhancement that probation would have applied. At this point, I could go on at length, but unless the Court has any questions for me, it seems that perhaps I should just rest on my brief. All right. Thank you. And we would ask the Court to affirm. Thank you. Two seconds. In my remaining two seconds, I'd like to ask the Court to look at excerpts of record, page 30, lines 8 to 11, which are the lines preceding what government counsel read, where the District Court says, I'm going to impose a 90-month term. This is a departure upward or a variance upward to take into account what I think is a lack of acceptance of guilt and responsibility. Thank you. Thank you. Case 0930268, United States of America v. Fable, is here submitted, and the Court will take a five-minute break. Thank you for your argument.
judges: Lucero, Hawkins, Smith N. R.